UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| VINCENT P. MONA, | : |
|         Plaintiff, | : |
| v. | :   Case No.: 8:21-cv-01017 (PJM) |
| DAVID F. McKAY, | : |
|         Defendant. | : |

**DEFENDANT DAVID F. McKAY'S BRIEF IN RESPONSE TO THE COURT'S SEPTEMBER 1, 2023 ORDER IN SUPPORT OF McKAY'S PRIVILEGE ASSERTIONS**

Defendant David F. McKay, by counsel and pursuant to the Court's September 1, 2023, Order (ECF 117), submits this Brief concerning privileged documents and communications from April 30, 2021 to November 9, 2021. *Id.* ¶¶ 2, 4. For the following reasons, the documents and communications are protected by the work product and common interest privilege, and in some instances, the attorney client privilege. The Court should uphold the privilege.

## BACKGROUND

This case arises out of Plaintiff Vincent "Cap" Mona's sale of all his stock in Mona Electric Group, Inc. ("MEG") to ArchKey Intermediate Holdings, Inc. ("ArchKey"). Cap is the former sole shareholder and Chairman of the Board of MEG. Cap closed the stock sale to ArchKey on February 1, 2020 when he, MEG, and ArchKey executed a Stock Purchase Agreement ("SPA"). That same day, Cap resigned from MEG's Board of Directors. After the sale, MEG was a wholly-owned subsidiary of ArchKey. Prior to the stock sale, McKay was the long-time President of MEG. After the stock sale, McKay remained an employee of MEG, was no longer President, but retained the title of CEO until he retired from MEG on March 5, 2021.

On March 23, 2021, after McKay retired, Cap filed a four-count complaint against McKay, alleging collusion with ArchKey during the sale process. *See* ECF No. 1-2. Then, on April 30, 2021, ArchKey filed a complaint against Cap in the Court of Chancery of the State of Delaware, Case No. 2021-0383, alleging Cap failed to comply with his obligations under the SPA. Cap responded on June 18, 2021, by filing a Counterclaim against ArchKey, alleging it agreed to purchase MEG for $21,000,000, that ArchKey failed to pay that amount after the true-up period, and seeking specific performance of the SPA.

McKay is therefore being sued by Cap based on alleged actions or inactions arising out of his work as an officer, director, and employee of MEG, both pre and post-sale. And as of April 30, 2021, both McKay and ArchKey were in active litigation with the same individual, Cap Mona, and had a common legal interest relating to those lawsuits. In association with these litigations, Counsel for McKay and ArchKey entered into a Common Interest Agreement on November 9, 2021. ECF 113-85 at 5. The Agreement noted the effective date was May 6, 2021, after the litigation had been filed in the instant case and in Delaware. *Id*. at 1. Counsel for Cap learned of the Common Interest Agreement on October 26, 2022 when he deposed ArchKey's corporate representative, Patrick Kriegshauser, in the Delaware litigation. *See, e.g.*, ECF 98 at 2, 98-1.

During discovery in this case, McKay produced a log identifying privileged documents and communications through April 30, 2021, the "Relevant Period" as defined by Cap's Requests for Production of Documents. *See* ECF No. 98-2 at 8. Cap now seeks documents and communications between April 30, 2021 and November 9, 2021 related to the Common Interest Agreement or to any indemnity, to include the payment of McKay's legal fees. *See* ECF. 97 at 3.

After a telephone hearing conducted on August 31, 2023, the Court issued an Order that, in part, directed McKay to either produce all such documents and communications between April

30, 2021 and November 9, 2021 or, if asserting privilege, produce a log and file an accompanying brief "setting forth legal authority for the proposition that a common interest agreement with a third party may take precedence over any duty of loyalty that a current or former employee owes to his current or former employer." ECF 117. McKay asserts that all such communications are privileged. Therefore, pursuant the Court's Order, McKay submits a privilege log for documents and communications between April 30, 2021 and November 9, 2021 and this associated Memorandum supporting the assertion of various privileges, to include the work product privilege and common interest privilege.

## ARGUMENT

Counsel for McKay has performed a complete search and review of documents within the scope of the Court's September 1st Order at ECF 117. That search included the records of McKay and counsel. The search of McKay's records disclosed a few communications that are unrelated to this matter, the Common Interest Agreement, or indemnity. Rather, they are discussions about soccer, birthday wishes, and other unrelated matters. While Cap's document request is limited to correspondence related to the Common Interest Agreement and indemnity, McKay is nonetheless producing these documents because they appear to be within the scope of the Court's order. Otherwise, as shown on the accompanying privilege log, all documents within the scope of the Court's order are communications by and with McKay's counsel occurring after the initiation of this lawsuit and are therefore privileged.

In addition, it is critical to point out that Cap Mona was never McKay's employer. It is undisputed that at all times, both before and after Cap's stock sale, McKay was employed by MEG. Cap was MEG's shareholder before the stock sale. ArchKey then occupied the same position vis-à-vis MEG post-sale. MEG is not a party to this lawsuit.

With this proper context, there is no agreement with a third party that would take precedence over duties of loyalty to a current or former employer and McKay does not claim any documents should be withheld under such a theory. MEG was McKay's former employer, not Cap or ArchKey. Rather, the question here is simpler; whether communications *of McKay's counsel* after the initiation of litigation are privileged? Those communications fit squarely within multiple privilege categories and Cap's empty allegations of "collusion" between McKay and ArchKey are insufficient to pierce these privileges.

**I.  All communications at issue are protected from disclosure under the attorney work product privilege.**

"Not even the most liberal of discovery theories can justify unwarranted inquiries into the files and mental impressions of an attorney." *Hickman v. Taylor,* 329 U.S. 495, 510 (1947). In this case, by seeking production of documents and communications of McKay's litigation counsel, Cap is trying to invade precisely what is protected by the work product privilege.

The work product privilege is "codified in Federal Rule of Civil Procedure 26(b)(3)" and is analyzed "in two contexts - fact work product and opinion work product." *In re Grand Jury Proc., Thursday Special Grand Jury Sept. Term, 1991*, 33 F.3d 342, 348 (4th Cir. 1994). Both fact and opinion work product "are generally protected and can be discovered only in limited circumstances." *Id*. Regarding fact work product, it can only be "discovered upon a showing of both a substantial need and an inability to secure the substantial equivalent of the materials by alternate means without undue hardship." *Id.* For opinion work product, it "is even more scrupulously protected as it represents the actual thoughts and impressions of the attorney, and the protection can be claimed by the client or the attorney." *Id.*

Counsel for Cap alleges they are entitled to the documents and communications related to indemnity and the payment of legal fees because "clearly these documents are relevant . . . they

4

have the possibility of proving additional collusion between Mr. McKay and ArchKey." *See* August 31, 2023 Tr. at 33:10-12. This argument, in essence, seeks to invoke the crime-fraud exception to the work product doctrine by alleging ongoing breaches of fiduciary or contractual duties.

All of the communications at issue, as reflected on the accompanying log, represent work of McKay's counsel during the course of this litigation. As such, "communications between attorneys have usually been held to be 'work product'" and are at the core of what the work product doctrine represents and protects. *See, e.g.*, 35 A.L.R.3d 412 (Originally published in 1971) (recognizing "an attorney's 'work product' consists of the content (as distinguished from the existence, location, etc.) of information prepared by the attorney (or in some circumstances by his agents) in his capacity as an attorney representing a client and 'with an eye toward litigation.'").

When, as Cap does here, a party seeks discovery of privileged communications based on the possibility of ongoing "collusion", *i.e.* fraudulent misconduct, that party has the burden to make a *prima facie* showing that the communications at issue are being used to further the alleged misconduct. *In re Application for an Ord. Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for use in a Foreign Proceeding*, 286 F. Supp. 3d 1, 10 (D.D.C. 2017). Cap cannot meet that burden. Rather, Cap's counsel offers nothing more than unsupported speculation that work product communications have the "possibility" of showing additional "collusion." To the contrary, the privilege log filed alongside this Brief unquestionably shows the communications during the period in question are the legitimate and ethical work of counsel defending McKay in this case and pursuing McKay's related legal interests. It should be no surprise that McKay's counsel would correspond with representatives of ArchKey to prepare McKay's defense and secure indemnity and fee payments based on the status of McKay as the former President of MEG. This is

particularly true given Cap's admission that "All of Cap's claims relate to or arise out of the SPA . . . ." (ECF 111 at 11) and are thus intimately intertwined with McKay's prior employment with MEG and ArchKey's purchase of the company. Anything less would be counter to the duty of counsel to provide competent representation.

Nor is there any practical reason to pierce the work product privilege under the circumstances of this case. The communications of McKay's counsel are not necessary to gather facts relevant to McKay's indemnity or the payment of attorney's fees. Cap can easily access these facts by alternate means. First and foremost, Cap's counsel may question McKay on these issues at trial, to the extent the Court finds the topic a permissible area for inquiry. As the Court recognized at the August 31st hearing regarding a separate request by McKay's counsel to take additional depositions, "[y]ou can take up these issues and you can examine witnesses at trial." *See* August 31st Tr. at 54:15-17. The Court's observation is equally applicable in this context. The *facts* of whether McKay is being indemnified or whether a third party is paying attorneys fees in this case can be elicited through trial testimony, if deemed relevant. Similarly, Cap's counsel may also question representatives of MEG and/or ArchKey.

For these reasons, the documents and communications subject to the instant request for documents are protected from disclosure under the well-established work product privilege. The Court should recognize that privilege and deny Cap's request for production.

**II.     In addition to the work product privilege, the common interest rule affords McKay privilege over documents and communications between counsel for McKay and representatives of ArchKey.**

McKay holds the common interest privilege, has properly logged the documents and communications at issue, and has not waived the privilege. The common interest rule extends both

the attorney-client privilege and work product privilege to all documents and communications identified by the Court in its recent Order.[1]

"The joint defense privilege, or common interest rule or doctrine, protects communications between parties who share a common interest in litigation." *In re Sanctuary Belize Litig.*, No. CV PJM 18-3309, 2019 WL 6717771, at *2 (D. Md. Dec. 10, 2019) (citing *In re Grand Jury Subpoena: Under Seal*, 415 F.3d 333, 341 (4th Cir. 2005)). "[T]he joint defense privilege 'presupposes the existence of an otherwise valid privilege, and the rule applies not only to communications subject to the attorney-client privilege, but also to communications protected by the work-product doctrine.'" *In re Sanctuary Belize Litig.*, 2019 WL 6717771, at *2 (quoting *In re Grand Jury Subpoenas, 89-3 & 89-4, John Doe 89-129*, 902 F.2d 244, 249 (4th Cir. 1990)). The common interest privilege "'permits parties whose legal interests coincide to share privileged materials with one another in order to more effectively prosecute or defend their claims.'" *Elat v. Ngoubene*, No. PWG-11-2931, 2013 WL 4478190, at *2 (D. Md. Aug. 16, 2013) (quoting *Hunton & Williams v. U.S. Dep't of Justice*, 590 F.3d 272, 277 (4th Cir. 2010)). "The Fourth Circuit has held that the joint defense privilege extends to civil co-defendants, and not just with respect to communications between their lawyers." *In re Sanctuary Belize Litig.*, 2019 WL 6717771, at *2 (citing *In re Grand Jury Subpoenas, 89-3 & 89-4, John Doe 89-129*, 902 at 249). *See also* RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 76 (2000) ("If two or more clients with a common interest in a litigated or nonlitigated matter are represented by separate lawyers and they agree to exchange information concerning the matter, a communication of any such client that otherwise qualifies as privileged under §§ 68- 72 that relates to the matter is privileged as against third persons. Any such

---

[1] With the exception of documents previously noted that do no involve counsel and, while not related to anything at issue in this case, are nonetheless being produced.

client may invoke the privilege, unless it has been waived by the client who made the communication").

"The proponent of the privilege, however, has the burden to establish the privilege applies and that there is a common interest." *In re Sanctuary Belize Litig.*, 2019 WL 6717771, at *2 (citing *Sheet Metal Workers Int'l Ass'n v. Sweeney*, 29 F.3d 120, 125 (4th Cir. 1994) and *Hanwha Azdel, Inc. v. C & D Zodiac, Inc.*, 617 F. App'x 227, 243 (4th Cir. 2015)). The "common interest must be about a legal matter." *In re Sanctuary Belize Litig.*, 2019 WL 6717771, at *2 (citing *States v. Aramony*, 88 F.3d 1369, 1392 (4th Cir. 1996)). To demonstrate that the common interest privilege applies, the proponent "must establish that when communications were shared among individuals with common legal interests, the act of sharing was part of an ongoing common legal enterprise." *Hempel v. Cydan Dev., Inc.*, No. PX-18-3404, 2020 WL 4933634, at *8 (D. Md. Aug. 24, 2020) (quoting *Neuberger*, 230 F.R.D. at 416). "While a written agreement is not required, and it is not necessary that 'both parties to the communications at issue be co-parties in litigation,' 'there must be an agreement or a meeting of the minds.'"[2] *Hempel*, 2020 WL 4933634, at *8 (quoting *Am. Mgmt. Servs., LLC v. Dep't of the Army*, 703 F.3d 724, 733 (4th Cir. 2013)).

Taking these factors in turn, there is an underlying valid privilege. McKay and his counsel have an attorney-client privilege and work product privilege. ArchKey and its counsel have an attorney-client privilege and work product privilege. These are the underlying valid privileges. *In re Sanctuary Belize Litig.*, 2019 WL 6717771, at *2 (quoting *In re Grand Jury Subpoenas*, 89-3 & 89-4, John Doe 89-129, 902 F.2d at 249). McKay and ArchKey are both in active litigation adverse to Mona and have been since April 30, 2021.

---

[2] Although not required for a common interest privilege, on or about November 9, 2021, counsel for ArchKey and counsel for McKay signed a formal written Common Interest Agreement. ECF 113-85. The Agreement is effective May 6, 2021. *Id.*

Their common interest, or coinciding legal interests since at the latest April 30, 2021, are the two active lawsuits. McKay and ArchKey's counsel had a common purpose to share information as reflected in the common interest agreement. As stated in the Agreement itself,

> ArchKey and McKay have determined that they may have a common interest in discussing common strategies to defend against Mona's claims and counterclaims in the Mona Litigations. ArchKey and McKay, through their respective counsel, enter this Agreement so that the parties and their counsel can discuss the defense of Mona's claims and counterclaims in the Mona Litigations, without waiving or releasing any privileges or protections afforded under law, practice or custom, including without limitation the attorney/client privilege, attorney work product protection and insured/insurer privilege.

ECF 113-85 at 1.

The shared communications of representatives for McKay and ArchKey are part of a "common legal enterprise", namely, litigating against Mona regarding the sale of MEG, documents surrounding that sale (*i.e.*, the Stock Purchase Agreement), events after the sale (*e.g.*, the Prince George's County Hospital Project and the post-closing adjustment period during which the final adjustment price would be determined), and execution of both respective litigations. Significantly, McKay had limited documents and ESI in his possession when Cap filed the instant lawsuit. McKay disclosed this fact in his May 25, 2021 initial report to the Court, stating "McKay is now retired . . . . Defendant has two computers and a phone that may have some limited information subject to ESI, however, it is clear that the bulk of any ESI resides with the Mona Electric Group, Archkey, and their accountants and attorneys." It was therefore made known to the Court and Cap that McKay's counsel would need to work with counsel for ArchKey to access documents and facts critical to his defense of this case. These facts undeniably establish a common interest privilege, and therefore an attorney-client and work product doctrine privilege, regarding the documents and communications in Paragraph Two of the Court's Order.

**III.     The common interest privilege and any alleged or actual duty of loyalty do not conflict with each other under the facts of this case.**

The Court has asked McKay to address whether the common interest privilege can overcome a duty of loyalty to a current or former employer. McKay does not contend, however, that the common interest privilege takes precedence over any legal duties, but rather allows counsel to share documents and information in connection with active litigation in two jurisdictions against a common party, Cap Mona. In this case, the common interest privilege attached on April 30, 2021, when both McKay and ArchKey were engaged in separate litigations against a common opponent. McKay has not withheld or claimed that any of his direct communications with or among MEG or ArchKey are shielded from disclosure by the common interest privilege because the agreement itself states its purpose is so "the parties *and their counsel* can discuss *the defense of Mona's claims and counterclaims in the Mona Litigations* . . . ." (ECF 113-85 at 1 (emphasis added).)

As shown on the accompanying log, the common interest privilege applies to correspondence by or among McKay's litigation counsel and representatives of ArchKey and relevant insurance companies. These communications are protected by the work product and common interest privileges. At the August 31st hearing, the Court recognized that correspondence involving counsel are different, stating:

> Anything involving McKay: To McKay, from McKay, copied to McKay from ArchKey or his counsel, clearly in play here. Not privileged. And if you have an objection to make, Mr. Maloney, you can. But you're confusing, in my view, deals that you may have had with counsel in the Delaware litigation.

*See* August 31st Tr. at 38:16-21. While there may have been confusion regarding the documents currently at issue, the accompanying privilege log that identifies all relevant correspondence between April 30, 2021 and November 9, 2021 provides clarity. In addition to work product

10

protection, the common interest privilege protects from disclosure all documents and communications on McKay's supplemental privilege log.

## CONCLUSION

For the foregoing reasons, Defendant David F. McKay asks the Court to sustain his assertion of privilege for the documents and communications identified in his privilege log accompanying this filing.

        DAVID F. McKAY
        By Counsel

        */s/ J. Peter Glaws, IV*
        Paul J. Maloney, 02026
        J. Peter Glaws, IV, 19258
        Carr Maloney P.C.
        2000 Pennsylvania Avenue, NW, Suite 8001
        Washington, D.C. 20006
        (202) 310-5500 (Telephone)
        (202) 310-5555 (Facsimile)
        paul.maloney@carrmaloney.com
        peter.glaws@carrmaloney.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing **Brief in Support of McKay's Privilege Assertions** was e-served via the Court's electronic filing system on this 11th day of September, 2023 to:

>Dennis Whitley, III, Esquire
>Shipley & Horne, P.A.
>1101 Mercantile Lane, Suite 240
>Largo, Maryland 20774
>
>Adam S. Taylor, Esquire
>Taylor, McCormack & Frame, LLC
>30 Milk Street, 5th Floor
>Portland, Maine 04101
>
>Aaron Sims, Esquire
>Timothy R. Dudderar, Esquire
>Potter Anderson & Corroon, LLP
>1313 North Market Street
>Wilmington, Delaware 19801
>
>Michael B. Brown, Esquire
>Joshua J. Gayfield, Esquire
>Miles & Stockbridge P.C.
>100 Light Street
>Baltimore, Maryland 21202

>>*/s/ J. Peter Glaws, IV*
>>J. Peter Glaws, IV