IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **VINCENT P. MONA**, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. PJM-21-1017 |
| | ) |
| **DAVID F. MCKAY**, | ) |
| | ) |
| Defendant. | ) |

**PLAINTIFF'S TRIAL MEMORANDUM**

Plaintiff Vincent "Cap" Mona ("**Mona**"), through his undersigned counsel, respectfully submits this Trial Memorandum to address the legal theories, evidence, and damages he intends to prove at trial.

I. **Count I: Breach of Contract**

   a. **Elements**

A contract is an agreement consisting of five elements:

(1) There must be two or more parties;
(2) The parties must have legal capacity to make the agreement;
(3) The agreement must be mutual;
(4) The agreement must be stated with reasonable certainty; and
(5) There must be consideration for the agreement.

MPJI-Cv 9:2 ELEMENTS OF A CONTRACT (citing *Kiley v. First Nat. Bank of Maryland*, 102 Md. App. 317 (1994)). *Accord WSC/2005 LLC v. Trio Ventures Assocs.*, 460 Md. 244, 265 (2018) ("To prove breach, a plaintiff must simply show that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation.") (internal quotation omitted).

   b. **Evidence**

Mona will introduce into evidence the February 1, 2020 Transaction Bonus agreement between Mona and McKay. Pursuant to this agreement, of even date with the Stock Purchase

Agreement ("**SPA**") between Mona and ArchKey Intermediate Holdings, Inc. ("**ArchKey**"), Mona paid McKay $714,000 in exchange for McKay's agreement to ensure that the "transactions contemplated by the [SPA] are consummated."

Mona will present evidence that McKay breached his obligations under the Transaction Bonus agreement (including the implied covenants of good faith and fair dealing) by failing to perform his duties both during the negotiation of the SPA and, subsequently, during the post-closing Adjustment Period—*i.e.*, by failing to ensure that the transactions contemplated by the SPA were consummated.  This evidence will be presented through the testimony of Mona and McKay, and contemporaneous emails and communications from McKay.

Mona will also introduce evidence of the consequential damages resulting from McKay's failure to perform his duties under the Transaction Bonus agreement.  In particular, McKay's settlement of the PG Hospital Project claims, change orders, and entitlements assignable to Mona resulted in approximately $14.4 million in damages to Mona.  This evidence will be presented through the testimony of Mona, Mark Mona, McKay, and other witnesses at trial.

While McKay is expected to argue that nothing on the face of the Transaction Bonus agreement obligated McKay to do anything at all during the Adjustment Period, his argument disregards both the timing of the agreement and the prospective language that appears therein— "If the transactions contemplated by the [SPA] are consummated…"  That is, Mona and McKay entered into the Transaction Bonus agreement on February 1, 2020, the date of the closing of the SPA.  While the payment was made to McKay on that date, the payment expressly depended on the "consummation" of the "transactions contemplated by the [SPA]."  Those transactions did not occur—and certainly not as "contemplated by the [SPA]", including the $21 million purchase price (which price is also reflected in the Transaction Bonus agreement's calculation of the McKay

2

Bonus). The future event on which the McKay Bonus depended did not occur—because McKay did not perform his duties to ensure that the "transactions contemplated by the [SPA] are consummated."

To the extent that McKay may argue that this construction is inconsistent with the language in the preceding paragraph of the Transaction Bonus agreement suggesting that the transaction bonus was being paid "[i]n consideration for the years of service provided by [McKay] to [Mona Electric Group, Inc. ("**MEG**")]," it is necessary to look to extrinsic evidence of the Parties' intent. Mona is anticipated to testify at trial that the entire purpose of the Transaction Bonus agreement was to ensure that McKay would continue to dutifully perform as CEO throughout the Adjustment Period in order to ensure that the $21 million SPA purchase price—if not an even higher price—was "consummated". Critically, during his deposition, McKay unambiguously affirmed that the Transaction Bonus Agreement was prospective in nature and that it imposed obligations on him to manage MEG throughout the Adjustment Period. Additional evidence at trial will include emails and statements by McKay confirming the obligations imposed on him by the Transaction Bonus agreement.

    **c. Damages**

Mona seeks **$714,000** in compensatory damages for McKay's failure to perform under the Transaction Bonus agreement and has proposed the following jury instruction: "In an action for damages for breach of contract, the plaintiff is entitled to be placed in the same situation as if the contract had not been broken. The damages therefore are the profits the plaintiff would have made had the contract been performed. These damages are arrived at after deducting the amount that it would have cost the plaintiff to have performed the contract." MPJI-Cv 10:31 DAMAGES AS A

REMEDY FOR BREACH OF CONTRACT--COMPENSATORY DAMAGES FOR NON-PERFORMANCE.

Mona also seeks **$113,731** in prejudgment interest, calculated as follows:

$714,000 x 6% annual prejudgment interest rate / 365 days/year * 969 days.

In support of his claim for prejudgment interest, Mona has proposed the following jury instruction:

> If you decide that the plaintiff is entitled to recover damages for past economic loss in one or more of the categories of damages claimed, then you must decide whether the plaintiff should also receive prejudgment interest on each item of loss in those categories. Prejudgment interest is the amount of interest the law provides to a plaintiff to compensate for the loss of the ability to use the plaintiff's funds.
> In Maryland the rate of prejudgment interest is six percent per year. If you award prejudgment interest, you must state on the special verdict form the date that you determine interest should begin for each loss. Whether the plaintiff should receive an award of prejudgment interest on all, some, or none of any past economic damages that you may award is within your discretion.

MPJI-Cv 10:23 PREJUDGMENT INTEREST (citing *I. W. Berman Properties v. Porter Bros.*, 276 Md. 1, 15 (1975) (affirming award of prejudgment interest on breach of contract claim and stating prejudgment interest "is permissible when the obligation owed is for a sum certain").

In addition, Mona seeks approximately **$14.4 million** in consequential damages and has proposed the following jury instructions: "In an action for breach of contract, the plaintiff may recover those damages that naturally arise from the breaking of the contract if the defendant had reason to foresee those damages at the time the contract was made." MPJI-Cv 10:32 DAMAGES AS A REMEDY FOR BREACH OF CONTRACT--CONSEQUENTIAL DAMAGES.  "A party harmed by breach of contract by another party may recover any expenses or losses incurred. This amount should be reduced by any expenditures that the breaching party can show the wronged party would have incurred if the contract had been performed."  MPJI-Cv 10:33 DAMAGES INCURRED IN RELIANCE ON OR IN PREPARATION OF CONTRACT.

4

**II.     Count II: Unjust Enrichment**

It is well-settled under Maryland law that restitution claims for money are treated as claims at law, for which there is a right to trial by jury.  *See Ver Brycke v. Ver Brycke*, 379 Md. 669, 698 (2004).  Mona seeks to recover under an unjust enrichment theory in the event that the Jury were to determine that the Transaction Bonus agreement does not constitute a binding and enforceable agreement between Mona and McKay.

   **a.  Elements**

A plaintiff may recover from a defendant on a claim for unjust enrichment upon proving the following three elements:

   (1) A benefit conferred on the defendant by the plaintiff;

   (2) An appreciation or knowledge by the defendant of the benefit; and

   (3) The acceptance or retention by the defendant of the benefit under circumstances that would make it inequitable for the defendant to retain the benefit without the payment of its value.

MPJI-Cv 9:32 UNJUST ENRICHMENT--ELEMENTS AND DAMAGES (citing *Hill v. Cross Country Settlements, LLC*, 402 Md. 281, 295 (2007)).

   **b.  Evidence**

Mona will introduce into evidence the Transaction Bonus agreement between Mona and McKay.  Mona will present evidence that McKay's retention of this payment is unjust in light of his collusion with ArchKey (to the detriment of Mona) and in light of his failure to continue to perform his duties as CEO of MEG following the February 1, 2020 closing date of the SPA.

   **c.  Damages**

Mona seeks **$714,000** in compensatory damages and has proposed the following jury instruction: "The measure of damages for unjust enrichment is the value of the benefit conferred

upon the defendant." MPJI-Cv 9:32 UNJUST ENRICHMENT--ELEMENTS AND DAMAGES (citing *Mogavero v. Silverstein*, 142 Md. App. 259, 276 (2002) (the "classic measurement of unjust enrichment damages is the 'gain to the defendant, not the loss by the plaintiff.'").

Mona also seeks prejudgment interest, *see supra*, in the amount of **$113,731** to compensate him for the loss of use of these funds during the nearly three years of this litigation. *See Konover Prop. Tr., Inc. v. WHE Assocs., Inc.*, 142 Md. App. 476, 496 (2002) (affirming award of prejudgment interest on unjust enrichment claim).

### III. Count III: Intentional Misrepresentation / Fraud

#### a. Elements

To recover damages for fraud / intentional misrepresentation, it must be shown that:

(1) the defendant made a false representation of a material fact;

(2) the defendant knew of its falsity or made it with such reckless indifference to the truth that it would be reasonable to charge the defendant with knowledge of its falsity;

(3) the defendant intended that the plaintiff would act in reliance on such statements;

(4) plaintiff did justifiably rely on the representations of the defendant; and

(5) plaintiff suffered damages as a result of that reliance.

MPJI-Cv 11:1 FRAUD OR DECEIT (citing *Ellerin v. Fairfax Sav., F.S.B.*, 337 Md. 216, 229 (1995)).

Fraud also may established by proof of the defendant's nondisclosure or concealment. To recover damages for deceit by nondisclosure or concealment, it must be shown:

(1) that defendant intentionally concealed a material fact that he or she had a duty to disclose;

(2) with the intent to induce the plaintiff to act differently from how the plaintiff would have acted had he or she known the true facts;

(3) that because of the concealment the plaintiff acted in a manner different from how he or she would have acted had the plaintiff known the true facts; and

(4) plaintiff suffered damages as a result of that reliance.

MPJI-Cv 11:2 NON-DISCLOSURE OR CONCEALMENT (citing *Lubore v. RPM Assocs., Inc.*, 109 Md. App. 312, 328 (1996)).

### b. Evidence

Mona will present evidence that McKay failed to disclose to Mona material facts about the proposed transaction with ArchKey prior to the execution of the Stock Purchase Agreement. Mona will also present evidence that McKay failed to disclose his collusion with ArchKey during the sale process. This evidence will be presented through the testimony of Mona, McKay, and other witnesses, as well as through extensive documentary evidence.

Mona also will present evidence that McKay misrepresented material facts to and concealed other material facts from Mona during the post-closing Adjustment Period. If McKay had truthfully disclosed how he was handling the PG Hospital Project and claims, change orders, and entitlements attendant thereto, Mona could and would have taken action to prevent this knowing and purposeful destruction of MEG's value. This evidence will be presented through the testimony of Mona, Mark Mona, McKay, and other witnesses at trial, as well as documentary evidence showing that McKay was collaborating with ArchKey to the detriment of Mona.

### c. Damages

Mona seeks **$14.4 million** in compensatory damages deriving from McKay's unauthorized, corrupt settlement of the PG Hospital Project claims, change orders, and entitlements after the Adjustment Period, which were assignable to Mona.

Mona also seeks **$1.5 million**, which was represented to Cap in the purchase offer comparison spreadsheet as the anticipated profits that would flow to Cap post-closing under ArchKey's September 2019 offer. Mona relied on McKay's false and misleading representations regarding these profits in deciding to accept ArchKey's September 2019 offer.

Mona submits that the general "compensatory damages" jury instruction, 4 Modern Federal Jury Instructions-Civil P 77-3, is an appropriate instruction (along with the punitive damages instruction detailed below) for this cause of action.

In addition, Mona seeks punitive damages in an amount to be determined by the jury based on McKay's fraudulent conduct and has proposed the following jury instruction:

> An award of punitive damages in this case requires that the defendant acted with malice. While an award for compensatory damages may be based upon a finding that the defendant made a representation with reckless indifference to its truth, this is not sufficient to warrant the award of punitive damages. Negligence, however gross, is not enough to award punitive damages. The defendant's knowledge of the falsity of the representation, coupled with the expectation that plaintiff would rely upon the representation, is the state of mind that justifies the award of punitive damages.

MPJI-Cv 10:15 PUNITIVE DAMAGES--MISREPRESENTATION/FRAUD (citing *Mathis v. Hargrove*, 166 Md. App. 286, 314–15 (2005)). Mona will introduce three principal categories of evidence for the jury to consider in awarding punitive damages against McKay.

First, Mona will ask the jury to consider the over **$1 million** that Mona has incurred in legal expenses in connection with this case. Maryland law authorizes the jury to consider the amount of attorney's fees incurred when awarding punitive damages. *St. Luke Evangelical Lutheran Church, Inc. v. Smith*, 318 Md. 337, 347 (1990) ("It is this punishment rationale that forms a solid basis for allowing the jury to consider attorney's fees when they are asked to calculate an award of punitive damages.").

8

Second, Mona will ask the jury to consider the deceptive nature of McKay's conduct, which deprived Mona of, among other things, a purchaser that would maintain MEG's culture and preserve Mona's legacy. McKay knew that Mona placed a high value on these considerations in selecting a purchaser, and McKay knowingly misled Mona into thinking that ArchKey would honor these values. An award of punitive damages will help to compensate Mona for the professional and reputational damage he has suffered as a result of McKay's deceit.

Third, Mona will also ask the jury to consider the pain and suffering, emotional damages, and/or emotional distress that Mona suffered as a result of McKay's fraud. For example, Mona suffered a definite physical injury—including hospitalization and ongoing medical treatment—as a result of McKay's fraud. *See Hoffman v. Stamper*, 385 Md. 1, 38 (2005) (explaining that emotional distress are properly recoverable in cases involving fraud where there is an "objectively ascertainable" physical injury).

### IV.     Count IV: Breach of Fiduciary Duty

#### a. Elements

A plaintiff may recover against a defendant for breach of fiduciary duty upon proving:

(1) the existence of a fiduciary relationship;

(2) a breach of the duty owed by the fiduciary to the beneficiary; and

(3) resulting harm to the plaintiff that is a reasonably foreseeable consequence of the defendant's breach of the duty.

MPJI-Cv 7:8 BREACH OF FIDUCIARY DUTY (citing *Plank v. Cherneski*, 469 Md. 548 (2020)). McKay owed Mona fiduciary duties based on several different relationships between them.

*First*, McKay owed fiduciary duties to MEG and to Mona by virtue of his position as an officer, CEO, and employee of MEG. *See, e.g., EndoSurg Med., Inc. v. EndoMaster Med., Inc.*, 71 F. Supp. 3d 525, 556 (D. Md. 2014) ("Under Maryland law, every contract of employment

9

contains an "implied duty that an employee act solely for the benefit of his employer in all matters within the scope of employment, avoiding all conflicts between his duty to the employer and his own self-interest.") (quoting *Maryland Metals, Inc. v. Metzner,* 282 Md. 31, 38 (1978)); Md. Code, Corps. & Assn's Art. § 2-214 (establishing duties of officers of Maryland corporations). As this Court has acknowledged, McKay's duties did not expire upon the execution of the SPA, but continued through the Adjustment Period and beyond. *See* October 12 Memorandum Opinion, ECF No. 125 at 9-10. Insofar as Mona was the 100% owner and sole stockholder of MEG, the fiduciary duties owed to MEG also were owed to Mona. *In re LandAmerica Fin. Grp., Inc.*, 470 B.R. 759, 782 (Bankr. E.D. Va. 2012) (explaining that while corporate officers and directors generally do not owe fiduciary duties directly to stockholders, that general rule does not apply in the context of a wholly-owned corporation). After all, "[t]he imposition on the officers and directors of a wholly-owned subsidiary of a fiduciary responsibility owed directly to the parent corporation is entirely appropriate as there exists only one, singular interest to be served." *Id.*[1]

*Second*, in the context of the sale transaction, McKay owed Mona fiduciary duties by virtue as his position as a director of MEG. *See* Md. Code, Corps. & Assn's Art., § 2-405.1(i)(1) ("This section [i]s the sole source of duties of a director to the corporation ***or the stockholders of the corporation***…") (emphasis added). *See also* B. Carlson and S. Wilson, *The Director Duties Bill: Amendments to Section 2-405.1 of the Maryland General Corporation Law*, 49-OCT Md. B.J. 40, 43 (2016) ("the 'best interests of the corporation' when the corporate body has no such interest, although undefined, almost certainly requires that a director act in the best interest of the stockholders.").

---

[1] While *LandAmerica* dealt with a corporation whose sole stockholder was another corporation, the logic underpinning that decision applies with equal force to an individual like Mr. Mona who was the sole stockholder of MEG. Mona's is the "singular interest to be served".

10

*Third*, McKay owed Mona fiduciary duties as the *de facto* broker for the transaction with ArchKey. This Court previously described the nature of the fiduciary duties that McKay owed to Mona as Mona's *de facto* broker for the transaction in its October 12 Memorandum Opinion. (ECF No. 125 at 10-12) (collecting cases). McKay's duties as *de facto* broker did not expire upon the execution of the SPA, but, rather, continued throughout the Adjustment Period. After all, the Adjustment Period ultimately dictated the transaction price under the SPA. If McKay were relieved of all post-closing obligations (as he is expected to argue at trial), he would leave his principal, Mona, entirely exposed and cannot be said to have carried out his duties as broker.

### b. Evidence

Mona will present evidence that McKay was colluding with ArchKey prior to the execution of the Stock Purchase Agreement in violation of his duties to Mona as CEO, as a director of MEG, and as Mona's *de facto* broker. This evidence consists both of testimony and extensive documentary evidence.

Mona also will present evidence that McKay failed to dutifully carry out his responsibilities as MEG's CEO and as Mona's *de facto* broker following the closing of the SPA, including in his handling of the PG Hospital Project and claims, change orders, and entitlements attendant thereto. This evidence will be presented through the testimony of Mona, Mark Mona, McKay, and other witnesses at trial, as well as documentary evidence showing that McKay was collaborating with ArchKey to the detriment of Mona.

### c. Damages

In *Plank*, the Supreme Court of Maryland recognized that the remedy for a breach of fiduciary duty will be dependent upon the specific law applicable to the specific fiduciary relationship at issue. 469 Md. at 600. The distinction that the *Plank* court draws turns on whether

the appropriate relief sounds in law (for which damages are available) or in equity (for which restitution or some other remedy is available). *Id.* at 601-02. *Plank* approvingly cites the definition of the tort provided by the Restatement (Third) of Torts – Liability for Economic Harm § 16 (2020), which provides that "[a]n actor who breaches a fiduciary duty is subject to liability to the person to whom the duty was owed." Comment b to this Restatement goes on to explain that "[t]he cause of action recognized by this Section, in turn, provides recourse to a plaintiff who wishes instead to recover damages that compensate for the loss caused by the fiduciary's breach." *Id.* Thus, Mona is entitled to money damages resulting from McKay's breaches of his fiduciary duties. Mona submits that the general "compensatory damages" jury instruction, 4 Modern Federal Jury Instructions-Civil P 77-3, is an appropriate instruction (along with the punitive damages instruction detailed below) for this cause of action.

Mona seeks **$14.4 million** in compensatory damages deriving from McKay's unauthorized, corrupt settlement of the PG Hospital Project claims, change orders, and entitlements after the Adjustment Period, which were assignable to Mona.

Mona also seeks **$1.5 million**, which was represented to Cap in the purchase offer comparison spreadsheet as the anticipated profits that would flow to Cap post-closing under ArchKey's September 2019 offer. Mona relied on McKay's guidance as Mona's broker in deciding to accept ArchKey's September 2019 offer.

In addition, Mona seeks punitive damages in an amount to be determined by the jury based on the fraudulent and malicious nature of McKay's breach of his fiduciary duties to Mona. Mona has proposed the following jury instruction on punitive damages: "For punitive damages to be recoverable as a result of the breach of a fiduciary duty owed by the defendant to the plaintiff, the wrongful conduct must be characterized by evil motive, intent to injure, ill will, or fraud." MPJI-

Cv 10:21 PUNITIVE DAMAGES--BREACH OF FIDUCIARY DUTY (citing *Adams v. Coates*, 331 Md. 1 (1993)). While there was some question at the time of *Adams* as to the existence of a "standalone" tort for the breach of fiduciary duty under Maryland law, the *Plank* court dispelled any question on that point. Thus, viewing together the *Adams* court's statement that a breach of fiduciary duty "can be the springboard for punitive damages," with the *Plank* court's affirmation of that tort, it is clear under Maryland law that that punitive damages are an available remedy for a breach of fiduciary duty. Mona will introduce three principal categories of evidence for the jury to consider in awarding punitive damages against McKay.

First, Mona will ask the jury to consider the over **$1 million** that Mona has incurred in legal expenses in connection with this case. Maryland law authorizes the jury to consider the amount of attorney's fees incurred when awarding punitive damages. *St. Luke*, 318 Md. at 347.

Second, Mona will ask the jury to consider the deceptive nature of McKay's conduct, which deprived Mona of, among other things, a purchaser that would maintain MEG's culture and preserve Mona's legacy. McKay knew that Mona placed a high value on these considerations in selecting a purchaser, and McKay knowingly misled Mona into thinking that ArchKey would honor these values. An award of punitive damages will help to compensate Mona for the professional and reputational damage he has suffered as a result of McKay's deceit.

Third, Mona will also ask the jury to consider the pain and suffering, emotional damages, and/or emotional distress that Mona suffered as a result of McKay's fraud. For example, Mona suffered a definite physical injury—including hospitalization and ongoing medical treatment—as a result of McKay's fraud. *See Hoffman*, 385 Md. at 38.

Respectfully submitted,

*/s/ Adam S. Taylor*
Adam S. Taylor (admitted *pro hac vice*)
Taylor, McCormack & Frame, LLC
267 Commercial Street
Portland, ME 04101
(207) 828-2005
ataylor@tmfattorneys.com

*/s/ Aaron R. Sims*
Aaron R. Sims (admitted *pro hac vice*)
Timothy R. Dudderar (admitted *pro hac vice*)
Potter, Anderson & Corroon, LLP
1313 North Market Street
Wilmington, DE 19801
(302) 984-6000
asims@potteranderson.com
tdudderar@potteranderson.com

*/s/ Michael B. Brown*
Joshua J. Gayfield (Fed. Bar No. 29189)
Michael B. Brown (Fed. Bar No. 19641)
MILES & STOCKBRIDGE P.C.
100 Light Street
Baltimore, MD 21202
410.727.6464
jgayfield@milesstockbridge.com
mbbrown@milesstockbridge.com

*Counsel for Plaintiff Vincent "Cap" Mona*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on December 3, 2023, a copy of the foregoing was served on all counsel of record via this Court's CM/ECF electronic filing system.

*/s/ Michael B. Brown*
Michael B. Brown