IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

VINCENT P. MONA,            )
                            )
    Plaintiff,              )
                            )
v.                          )   Civil Action No. 8:21-cv-01017-PJM
                            )   Judge Peter J. Messitte
DAVID F. MCKAY,             )
                            )
    Defendant.              )
_____)

Motion "DENIED" this 21 day of DEC, 2023.

_____
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

### DEFENDANT DAVID F. MCKAY'S MOTION TO PARTIALLY STRIKE THE TESTIMONY OF FACT WITNESS MARK MONA AND TO EXCLUDE PLAINTIFF'S EXHIBIT NO. 276

Defendant, David F. McKay, by counsel, moves the Court to partially strike the testimony of fact witness Mark Mona and exclude (i) his expert testimony pursuant to Federal Rule of Evidence 702, (ii) his testimony regarding Plaintiff's Exhibit 276 pursuant to Federal Rules of Evidence 801, *et seq.*, which constitutes multiple levels of hearsay that does not fall into any of the recognized exceptions; and (iii) his testimony regarding Mona Electric Group, Inc.'s ("MEG") past practices after the MEG–ArchKey transaction.

Mr. Mona was not identified as an expert and would have been made subject to a *Daubert* motion had he been due to his substantial lack of qualifications. Plaintiff's Exhibit 276 further constitutes inadmissible hearsay and admitting it at trial would unfairly prejudice Mr. McKay and mislead the jury. Finally, the doctrine of collateral estoppel bars Mr. Mona's testimony regarding MEG's past business practices.

## ARGUMENT

I.  **Mark Mona is Not an Expert.**

The Court should partially strike Mark Mona's testimony as unidentified and unqualified expert testimony. Federal Rule of Evidence 702 provides that a witness having specialized knowledge, skill, experience, training, or education may qualify to testify through his opinion if 1) "[his] scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue"; 2) he bases his testimony on sufficient facts or data; 3) the testimony results from reliable principles and methods; and 4) the opinion "reflects a reliable application of the principles and methods to the [case's facts]." FED. R. EVID. 702. In contrast, Rule 701 limits a lay fact witness to opinion testimony that is: "(a) rationally based on the perception of the witness; (b) helpful to clearly understand the witness's testimony or to determining a fact in issue; and (c) *not based on scientific, technical, or other specialized knowledge* with [Rule 702's scope]." FED. R. EVID. 701 (emphasis added).

Lay witnesses may "offer an opinion [based on] relevant historical or narrative facts that the witness has *perceived*." *Certain Underwriters at Lloyd's, London v. Sinkovich*, 232 F.3d 200, 203 (4th Cir. 2000) (emphasis added) (citations and quotation marks omitted). But a fact witness may not express opinions as to matters beyond the realm of common experience and requiring an expert witness's special skill and knowledge. *Id*. A critical distinction between Rules 701 and 702 testimony is that an expert witness must possess some specialized knowledge or skill or education that the jurors do not possess. *Id*. Unlike a lay witness under Rule 701, an expert can answer hypothetical questions and offer opinions not based on firsthand knowledge because his opinions presumably will have a reliable basis in his discipline's knowledge and experience. *Id*.

Federal courts have applied these rules to the construction industry. In one case, the court

2

permitted a proposed expert to testify as to the issue of bidder expectations and bid reasonableness under several circumstances: 1) he claimed to have been "responsible for estimating over 3,000 projects totaling more than $12 billion"; 2) he had been allowed to testify as an expert in construction issues in four prior cases; and 3) he explained at depositions that most of his construction experience had been in overseeing project estimations, requiring him to review all construction bids pre-submission. *See St. Louis Constr. of Texas, Ltd. v. City of Baton Rouge*, No.: 14-00566-JWD-EWD, 2018 WL 2234528 at *5 (M.D. La. May 5, 2018). In another case, the Seventh Circuit ruled a district court did not abuse its discretion by admitting experts in the area of drywall installation rates where one expert had worked directly in drywalling industry for many years and trained apprentices for more than 10 years, including drywall tapers employed by employer, and could render opinion on amount of work that drywall taper could reasonably be expected to do in one day, and where a second expert performed cost estimating on regular basis, had done such work for 30 years, and used source widely recognized in construction industry. *See Trustees of the Chicago Painters and Decorators Pension, Health & Welfare, and Deferred Savings Plan Trust Funds v. Royal International Drywall and Decorating, Inc.*, 493 F.3d 782, 788 (7th Cir. 2007).

The Court should strike Mark Mona's testimony concerning the reasonableness of the hospital settlement for three primary reasons. First, Mr. Cap Mona failed to initially disclose or even designate Mark Mona as an expert during discovery or in accordance with this Court's Initial Scheduling Order. Second, Mark Mona testified during his depositions that while he was not an expert in project/bid estimating, he could have "scrubbed" bids with help from experts. *See* Deposition of Mark Mona at 21:10–22:15. Finally, and most importantly, Mark Mona lacks the necessary qualifications to testify as an expert in bid estimating, claims resolution, total cost

recovery, and the reasonableness of Mr. McKay's efforts to settle the Prince George's County Hospital project. Mark Mona has no professional license as an electrician and had never had one. *See* Trial Testimony (Dec. 15, 2023); Deposition of Mark Mona at 20:3–4. If Mark Mona had properly been identified as an expert witness, he would have been subjected to a *Daubert* motion.

Despite a brief stint as MEG's Construction Division President from 1987 to 1992, Mark Mona lacks the requisite experience to testify on bid estimation, claims resolution, or total cost recoveries. Mr. DiMuzio previously testified that Mark Mona spent only *two weeks* in the field before he had "seen enough." After he took over as President & CEO of the combined MEG Construction–Service company in 1992, Mark Mona held that position for ten years before he was fired by MEG's Board of Directors in 2002. *See Mona v. Mona Elec. Grp., Inc.*, 176 Md. App. 672, 687, 934 A.2d 450, 458 (2007) ("In April 2002, the Board of Directors fired Mark [and] removed him as a director,").

Mark Mona has neither worked in the field nor as a construction company executive since 2002. Regarding this case and the Hospital Project, Mark Mona lacks any firsthand knowledge or specialized experience to testify in a meaningfully beneficial way about what Mr. McKay did, had done, or should have done. Any purported expert opinion Mark Mona can give stems from knowledge he acquired more than twenty years ago based on projects and operations that MEG had as a smaller, less sophisticated electrical contracting business. Because he has neither specialized knowledge or experience, nor firsthand perception on any aspect of the Hospital Project, Mark Mona cannot permissibly testify based on his opinion. This Court should strike Mark Mona's purported expert and lay opinion testimony regarding the Hospital Project, the availability of a total cost recovery, and the reasonableness of the Project's ultimate settlement.

As to his opinion testimony regarding whether Mr. McKay breached a fiduciary duty or

construction of the terms of the Transaction Bonus Agreement, Mark Mona cannot offer any such opinion testimony. Courts may not admit any opinion testimony stating a legal standard or drawing a legal conclusion by applying law to facts. *See United States v. McIver*, 470 F.3d 550, 561–62 (4th Cir. 2006). "[T]he best way to determine whether opinion testimony [is unhelpful because it merely states] legal conclusions, is to determine whether the terms used by the witness have a separate, distinct and specialized meaning in the law different from that present in the vernacular." *United States v. Perkins*, 470 F.3d 150, 158 (4th Cir. 2006). "The court should first consider whether the question tracks the language of the legal principle at issue or of the applicable statute; then, the court should consider whether any terms employed have a specialized legal meaning." *Id*.

The Court should also strike Mark Mona's opinion testimony regarding what Mr. McKay's obligations under the Transaction Bonus Agreement (the "Agreement") were and whether McKay breached any fiduciary duty owed to Mr. Cap Mona during the True Up period. Mark Mona testified at length that the Agreement contained purported additional obligations for Mr. McKay during the True Up period. The Agreement speaks for itself. The Agreement does not state that Mr. McKay must "have continued on as his ordinary course as President and CEO" for a period of ten months after the sale of MEG on February 1, 2020, as Mark Mona testified. *See* Trial Transcript, Volume 9, at 1374:12-17. The Agreement afforded Mr. McKay a percentage of the transaction for past services provided. To allow Mark Mona to construe the Agreement to include extraneous terms would not only invade on this Court's province of contract interpretation as a legal question, but also confuse and mislead the jury as to the ultimate issues in this case. Moreover, Mark Mona lacks any legal training or experience to testify what a fiduciary duty is and whether Mr. McKay breached any fiduciary duties owed to Mr. Cap Mona. Allowing him to testify as to legal

5

conclusions is wholly improper. Accordingly, this Court should strike Mark Mona's testimony regarding contract interpretation and legal conclusions regarding Mr. McKay's conduct.

## II. Plaintiff's Exhibit 276 is Inadmissible Hearsay.

### a. Plaintiff's Exhibit 276 is Hearsay not subject to an exception.

The Federal Rules of Evidence define hearsay as any oral or written assertion "that the declarant does not make while testifying at the current trial or hearing" offered in evidence to prove the truth of the matter asserted in the statement." FED. R. EVID. 801(a); (c). Statements that are offered not to prove truth of matter asserted, but for some other legitimate purpose, do not qualify as "hearsay." *U.S. v. Bursey*, 85 F.3d 293 (7th Cir. 1996). A district court must first identify the actual purpose for which a party is introducing the statement at issue to determine whether an out-of-court statement qualifies as inadmissible hearsay. *See United States v. Gonzales-Flores*, 701 F.3d 112, 117 (4th Cir. 2012).

Some written assertions, like a business record, contain multiple levels of hearsay, or hearsay within hearsay. A court may admit investigative reports that are otherwise hearsay under Fed. R. Evid. 803(6)[1]. *Sinkovich, supra.*, at 204 (4th Cir. 2000). For the Rule 803(6) exception to apply, a report requires indicia of reliability and trustworthiness. *Id*. "Reports and documents prepared in the ordinary course of business are generally presumed to be reliable and trustworthy for two reasons: First, businesses depend on such records to conduct their own affairs; accordingly, the employees who generate them have a strong motive to be accurate and none to be deceitful. Second, routine and habitual patterns of creation lend reliability to business records. The absence

---

[1] Such as "s memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate a lack of trustworthiness." *Sinkovich, supra.*

6

of trustworthiness is clear, however, when a report is prepared in the anticipation of litigation because the document is not for the systematic conduct and operations of the enterprise but for the primary purpose of litigating." *Id.* at 205 (citations and internal quotation marks omitted); *see also Scheerer v. Hardee's Food Sys. Inc.*, 92 F.3d 702, 706–07 (8th Cir.1996) (stating that an incident report of a slip-and-fall at a restaurant lacked trustworthiness because it was made with knowledge that incident could result in litigation); *United States v. Blackburn*, 992 F.2d 666, 670 (7th Cir. 1993) (lensometer report prepared at behest of FBI and with knowledge that any information it supplied would be used in ongoing criminal investigation was not prepared and kept in ordinary course of eyeglasses business), *Picker X–Ray Corp. v. Frerker*, 405 F.2d 916, 922–23 (8th Cir. 1969) (hospital report made by business manager after accident which he knew could result in litigation was not used for treatment or any other ordinary business purpose but instead with knowledge that incident could result in litigation). A court must exclude all written assertions containing hearsay within hearsay where each assertion fails to conform with an enumerated exception. *See* FED. R. EVID. 805; *see also* FED. R. EVID. 803; 804.

In *Sinkovich*, insurer Llyod's of London hired a marine surveyor and investigator to investigate an accident involving a wrecked yacht owned by policyholder Sinkovich. *Id.* at 202 The investigator, Geary, "compiled a comprehensive file of several hundred pages regarding the incident. In preparing the report, Geary investigated the wreckage and interviewed Sinkovich, his fiancée, and other people with information concerning the wreck." *Id.* Lloyd's of London then filed a declaratory judgment action against Sinkovich. At trial, the Court rejected Lloyd's of London's argument that Geary was an expert witness, but nevertheless submitted Geary's report and file into evidence as a lay witness under Fed. R. Evid 803(6). On appeal, Judge Widener of the Fourth Circuit overturned the trial court and found Geary's report and file to be hearsay, noting

7

that "[it]t was undisputed that [Lloyd's of London] hired Geary to prepare the report specifically for this case. This admission reveals [Lloyd's of London's] motivation for having the report prepared and precludes it from relying on the business record exception." *Id.* at 205. The Court found that the fact that Geary was an outside investigator rather than an internal company employee immaterial—"The report is no more trustworthy because Geary prepared it..." *Id.*[2]

The Court should exclude Plaintiff's Exhibit 276 in its entirety as inadmissible hearsay. Mark Mona created Plaintiff's Exhibit 276, a document styled as an "Impact Report" that purports to be dated "February 29, 2021." As an initial matter, Mr. Cap Mona seeks to introduce Plaintiff's Exhibit 276 to show this jury the truth of the matters asserted, namely that Mr. McKay defrauded him, breached several alleged obligations owed to him, and unjustly enriched himself. Plaintiff's Exhibit 276 contains numerous allegations against both ArchKey and Mr. McKay in support of Plaintiff's Exhibit 275, a letter by attorney Adam S. Taylor to Patrick Kriegshauser, ArchKey Holdings CFO, dated January 29, 2021[3], to object to the post-closing adjustment.

Plaintiff's Exhibit 276 is inadmissible hearsay. Moreover, it does not fall into any relevant hearsay exception. It is not a business record, recorded recollection, or learned treatise. It is essentially a prelitigation demand letter (and objection to ArchKey's post-closing adjustment), made in anticipation of litigation, which "constitutes inadmissible hearsay." *Aniplex, Inc. v. Upper Deck Co.*, No. 2:08–cv–00442–HDM–PAL, 2011 WL 3889566 at 2 (D. Nev. Sept. 2, 2011) (prelitigation demand letter sent by third-party to party to lawsuit deemed inadmissible hearsay).

---

[2] The Court went on to say "Litigants cannot evade the trustworthiness requirement of Rule 803(6) by simply hiring an outside party to investigate an accident and then arguing that the report is a business record because the investigator regularly prepares such reports as part of his business. If that were the case, parties that face litigious situations could always hire such nonaffiliated firms and investigators to prepare a report and then seek to admit the document over hearsay objection."

[3] As 2021 was a leap year, it can be surmised that the Impact Report is also dated January 29, 2021, and the February 29, 2021 date on the first page of the Impact Report is a typo. Mark Mona also testified that the date on the Impact Report is a typo, and it should have been dated January 29, 2021.

Plaintiff's Exhibit 276 contains allegations of unlawful conduct made against a third-party in anticipation of potential litigation. The document specifically contains numerous statements that are hearsay when viewed either in isolation or in the context of the full document. These include, but are not limited to, the following:

- Under the heading "Archkey/McKay Fraud"
    - "ArchKey-McKay, manipulated and disregarded Original Closing Balance Sheet by improperly altering it to approximately $14,500,000 instead of the agreed upon book value/purchase price of $22,000,000…"
    - "OBJECTION: The PG Hospital Actual Contract Value is in excess of $45,000,000 but ArchKey/McKay manipulated the actual Contract Value down over $15,000,000 to approximately $30,000,000…"
    - A statement that, *contra* ArchKey, "PG Hospital is expected to be profitable…"
    - A statement that the 2019 DHG field audit was the result of "gaming and corrupt manipulation…"
    - A statement that "ArchKey/ McKay corruptly manipulated the adjusted contract margin from 12% to 6%" on the CapitalOne Contract.
- Under the heading "Alan Freund Facts and Objections," Mark Mona claims that third-party Alan Freund, a witness testifying at this trial, made the following statements:
    - A statement that Mr. Mona was told by Mr. Freund that Freund "had first hand working experience and knowledge with the nearly 7 months of intensive due diligence ArchKey conducted on the Company."
    - A statement that Mr. Mona was told by Mr. Freund that Freund "had first hand working experience and knowledge with the fact that the Hospital Contract had an

9

original estimated contract margin of approximately 10%."

- o A statement that Mr. Mona was told by Mr. Freund that Freund "McKay made the unilateral decision to 'write down' the Hospital estimated margin from [a]pproximately 10%/$4,000,000 to essentially break even."

- Under the heading "OBJECTION/FACTS: 'The Clear Out Scene.'"
  - o An allegation that on March 2, 2020, McKay met with Mr. Freund and exclaimed "we're going to write the Hospital Project down two to three million dollars," and a further allegation that this was said without the ordinary procedures for write downs being taken.
  - o That Mr. Freund's termination on March 3, 2020 was "soprano styled".

- Under the heading "Archkey's 13 Acts of Corruption"
  - o An allegation that Archkey's acquisition of Representation and Warranty Insurance was a "premediated" and "corrupt" act.

Because it is an advocacy document, prepared in anticipation of a dispute and/or litigation with ArchKey, asserting subjective allegations against Mr. McKay and ArchKey, Plaintiff's Exhibit 276 is inadmissible hearsay. The Court should therefore exclude Plaintiff's Exhibit 276 in its entirety.[4]

### b. The statements contained in Plaintiff's Exhibit 276 are inadmissible multiple hearsay.

The Court should exclude Plaintiff's Exhibit 276 as inadmissible multiple hearsay as well. To be admissible, each oral or written assertion contained in a hearsay document must fall into an enumerated hearsay category. *See* FED. R. EVID. 805. Mark Mona's "investigation" involved

---

[4] Plaintiff filed the instant lawsuit against David McKay on March 23, 2021, shortly after the Plaintiff's Exhibit 276 was sent to ArchKey.

10

conversations with multiple people who made oral assertions about McKay/ArchKey after ArchKey took over as new owner. Those assertions by third parties do not fall into an applicable hearsay exception. Mark Mona admitted on the witness stand that he did not take notes of his purported "interviews" with these third parties. The assertions within the "Impact Report" are therefore not only hearsay, but Mark Mona's subjective and unreliable recollection of that hearsay. The document and the assertions therein simply lack the trustworthiness and reliability that the hearsay rules seek to protect at trial. Because the statements contained in the "Impact Report" do not meet the requirements of multiple levels of hearsay, Mr. Cap Mona should not be allowed to introduce Plaintiff's Exhibit 276 into evidence.

### c. The Danger of Unfair Prejudice Outweighs Any Probative Value that Plaintiff's Exhibit 276 may have.

If the Court determines that Plaintiff's Exhibit 276—the "Impact Report"—falls into a hearsay exception, this Court should exclude the exhibit in its entirety under the Rule 403 balancing test. Rule 403 allows a court to exclude otherwise relevant and admissible evidence if the danger of unfair prejudice substantially outweighs its probative value. Fed. R. Evid. 403. First, Plaintiff's Exhibit 276 has no probative value. It states Mr. Cap Mona's allegations in a similar way that his Complaint does, and a plaintiff's own complaint is not evidence of whether his allegations are true. During a bench conference on December 15, 2023, this Court afforded the parties an opportunity to redact portions of Plaintiff's Exhibit 276 to minimize the prejudicial effect that it has on Mr. McKay. But no amount of redactions minimizes the prejudicial effect that Plaintiff's Exhibit 276 has on Mr. McKay. The document in its entirety is a self-serving statement filled with subjective, highly charged, and inflammatory language that substantially prejudices Mr. McKay. Because it has no probative value and significantly prejudicial language, no amount of redactions will make Plaintiff's Exhibit 276 admissible under the Federal Rules of Evidence. Thus,

the Court should exclude Plaintiff's Exhibit 276 in its entirety as unfairly prejudicial under Rule 403. Furthermore, Plaintiff's Exhibit 276 is unnecessary cumulative evidence that adds nothing to Plaintiff's case. Plaintiff has had nine days to produce documents and witnesses before the jury. It should not be allowed to submit evidence by the back door in this fashion.

### III. This Court should strike Mark Mona's Testimony Regarding Past Practices because it is barred by the doctrine of collateral estoppel.

This Court should strike Mark Mona's testimony regarding past or historical practices post-acquisition because it is barred by the settled principles of collateral estoppel. Collateral estoppel reflects Maryland's long-standing public policy that a result on an issue binds those who contest that issue, thus settling that issue once tried. *See, e.g., Prescott v. Coppage*, 266 Md. 562, 570 (1972). Nonmutual collateral estoppel bars a plaintiff from relitigating issued decided in a previous or parallel case where he was a party, or in privity with a party, to the previous, even if the defendant was not a party to that case. *Leeds Fed. Sav. & Loan Ass'n v. Metcalf*, 332 Md. 107, 116 (1993). A party seeking nonmutual collateral estoppel must show four elements to bar the issue(s) raised: 1) an issue decided in a prior adjudication identical with the one raised in the current action; 2) a final judgment on the merits; 3) the party against whom the plea is asserted is a party to the prior adjudication; and 4) the party against whom the plea is asserted had a fair opportunity to litigate the issue. *Id.* at 117–18.

In this case, Mark Mona repeatedly testified that the Stock Purchase Agreement ("SPA") required ArchKey and Mr. McKay to run the company in accordance with "past business practices." *See, e.g.*, Trial Transcript, Volume 9 at 1337:12-14, 1373:19-24, 1393:10-12. The Court, however, should strike Mark Mona's testimony that the SPA required MEG, and specifically Mr. McKay, to maintain past business practices in accordance with historical practices. Counsel on both sides of this litigation have mentioned the parallel litigation in Delaware involving Mr. Cap

Mona and ArchKey. One of the issues that has been fully litigated and decided in the Delaware litigation included maintaining past practices post-closing. Mark Mona's testimony directly involves historical practices *identical* to those issues litigated in Delaware: the SPA's obligations regarding maintenance of historical practices.

The Delaware Court of Chancery held that post-closing statements consistent with past practices meant consistency "with past accounting practices, *not* past business practices." *ArchKey Intermediate Holdings, Inc. v. Vincent P. Mona*, C.A. No. 2021-0383-JTL, at *33–34 (Del. Ch. Oct. 3, 2023)[5]. Mark Mona's testimony that the SPA required MEG to be operated in a manner consistent with "past business practices" seeks to relitigate the exact issue which the Delaware court has already decided. Because Mark Mona's testimony seeks to relitigate this issue here despite Vice Chancellor Laster's final judgment on it, the first and second elements of collateral estoppel are met.

Regarding the third element of collateral estoppel, Mr. Cap Mona is a party to the Delaware action. Accordingly, the Delaware court's judgment on the past practices issue binds him. Finally, Mr. Mona had ample opportunity to fairly litigate this issue. He cannot now, through Mark Mona's testimony (or any claim or testimony in this case), circumvent the Delaware court's judgment on this issue by claiming Mr. McKay breached a fiduciary or contractual duty by not operating MEG in accordance with past business practices after MEG's sale to ArchKey closed. Because Mr. Cap Mona fully litigated the past business practices issue in Delaware, and that resulted in a final judgment, the doctrine of collateral estoppel bars him from relitigating the issue vis-à-vis Mark Mona's testimony in this case, or any other testimony or claim. Thus, the Court should strike Mark Mona's testimony regarding past practices as collaterally estopped.

---

[5] Submitted to this Court at ECF 123.

## CONCLUSION

For the foregoing reasons, the Court should grant Mr. McKay's Partial Motion to Strike and Motion to Exclude Evidence.

Respectfully submitted,

DAVID F. MCKAY

By Counsel,

*/s/ J. Peter Glaws, IV*
Paul J. Maloney, 02026
J. Peter Glaws, IV, 19258
CARR MALONEY P.C.
2000 Pennsylvania Avenue, NW
Suite 8001
Washington, D.C. 20006
(202) 310-5500 (Tel.)
(202) 310-5555 (Fax)
paul.maloney@carrmaloney.com
peter.glaws@carrmaloney.com
*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing **Defendant David F. McKay's Motion to Partially Strike Mark Mona's Testimony and Exclude Plaintiff's Exhibit No. 276** served via the Court's electronic filing system to:

>Adam S. Taylor (admitted *pro hac vice*)
>Taylor, McCormack & Frame, LLC
>267 Commercial Street
>Portland, ME 04101
>(207) 828-2005
>ataylor@tmfattorneys.com
>
>Aaron R. Sims (admitted *pro hac vice*)
>Timothy R. Dudderar (admitted *pro hac vice*)
>Potter, Anderson & Corroon, LLP
>1313 North Market Street
>Wilmington, DE 19801
>(302) 984-6000
>asims@potteranderson.com
>tdudderar@potteranderson.com
>
>Joshua J. Gayfield (Fed. Bar No. 29189)
>Michael B. Brown (Fed. Bar No. 19641)
>MILES & STOCKBRIDGE P.C.
>100 Light Street
>Baltimore, MD 21202
>(410) 727-6464
>jgayfield@milesstockbridge.com
>mbbrown@milesstockbridge.com
>
>*Counsel for Plaintiff*

>>/s/ J. Peter Glaws, IV
>>J. Peter Glaws, IV