

1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
302 984 6000
www.potteranderson.com

Aaron R. Sims
Partner
asims@potteranderson.com
302 984-6149 Direct Phone
302 658-1192 Fax

January 1, 2024

**VIA CM/ECF**
The Honorable Peter J. Messitte
United States District Court for the District of Maryland

> Re: *Mona v. McKay*, **Case No. PJM-21-1017**
> Letter Opposing McKay's Rule 50(a) Motion and Reserving Right to Present Further Opposition at Oral Argument

Dear Judge Messitte:

  I write on behalf of Plaintiff Vincent Mona ("Mona") in response to Defendant David McKay's ("McKay") December 27, 2023 Motion for Judgement as a Matter of Law under Federal Rule of Civil Procedure 50(a) (the "Rule 50(a) Motion") (ECF No. 180). Consistent with the Court's guidance at trial, Mona intends to present oral argument in opposition to the Rule 50(a) Motion on January 2, 2024. During oral argument, Mona will provide, among other things, answers to the Court's questions articulated in the December 29, 2023 email from Christina Longo to counsel for the parties.

  As will be more fulsomely explained when Mona presents oral argument, McKay's Rule 50(a) Motion is nothing more than a baseless, desperate attempt to avoid having this matter submitted to the jury and, accordingly, should be denied. Notably, McKay wholly ignores the plaintiff-friendly standard applicable on a Rule 50(a) motion, which requires the Court to view the evidence in the light most favorable to the plaintiff, to draw all reasonable inferences in the plaintiff's favor, and to decline to weigh the evidence (which is the province of the jury). *See Mathis v. Terra Renewal Servs., Inc.*, 69 F.4th 236, 242 (4th Cir. 2023); *McClure v. Price*, 300 F.2d 538, 543 (4th Cir. 1962).

  In addition to ignoring the applicable legal standard, McKay's Rule 50(a) Motion also ignores the body of evidence adduced at trial and, instead, focuses on the allegations made almost three years ago in Mona's Complaint and on a few pieces of cherry-picked evidence that McKay believes supports his position. This type of divorced-from-reality posturing can be saved for McKay's closing argument, but it cannot form the basis for a credible Rule 50(a) motion.

  For example, McKay's argument that Section 6.5(a) of the SPA mandates entry of judgment in McKay's favor is wrong and has already been rejected by this Court. McKay raised this exact argument in his second motion for summary judgment (ECF No. 102-1 at 24-26), which the Court summarily denied (8/31/23 Transcript at 15-16). As explained in Mona's Response in Opposition to McKay's second summary judgment motion (ECF No. 111 at 21), the release in the

SPA upon which McKay purports to rely expressly excludes "any claims relating to or arising out of [the SPA], [or] any other Transaction Document…" (Plaintiff's Ex. 48 at § 6.5(a).) McKay concedes that the Transaction Bonus Agreement is a Transaction Document under the SPA and, therefore, that Mona's claims based on the Transaction Bonus Agreement are outside the scope of the release. (ECF No. 180-1 at 3 n.2.) Hence, insofar as Mona's claims relate to the SPA, the Transaction Documents (including the Transaction Bonus Agreement between Mona and McKay), and the acts and omissions that led to those agreements, the release is plainly inapplicable. McKay is acutely aware of this reality: indeed, McKay excised the limiting language from the portion of the release that he recited in his Rule 50(a) Motion because he knew that that limiting language forecloses his argument. Additionally, it is axiomatic that McKay cannot stand behind a release that was procured by fraud, as the evidence at trial showed. *See, e.g.*, *Parish v. Maryland & Virginia Milk Producers Ass'n*, 250 Md. 24, 101 (1968) ("If the release is obtained by fraud, it may be set aside for this reason.").

Moreover, as demonstrated by the limited examples highlighted below, there was overwhelming evidence adduced at trial upon which the jury could find in Mona's favor on all four counts in Mona's Complaint. The below-cited examples are not exhaustive, but do suffice to defeat McKay's instant Motion. In any event, Mona will provide, at oral argument on the Rule 50(a) Motion, additional examples of the evidence adduced at trial upon which the jury could render a verdict in Mona's favor on all four counts.

First, as to Mona's breach of contract claim, McKay argues that "no reasonable jury could find that Mr. McKay breached the Transaction Bonus Agreement" because that agreement purportedly "resulted from Mr. McKay seeking recognition for his several years of service to both MEG and Mr. Mona." (ECF No. 180-1 at 4-5.) However, McKay ignores the testimony of Mona and Mark Mona, who testified that, under the Transaction Bonus Agreement, McKay agreed to remain as a fully-engaged CEO during the true-up period to attempt to make Mona Electric Group, Inc. ("MEG") extra-profitable and to settle the change orders and claims on the PG Hospital project at the highest value possible so that Mona would receive additional funds at the end of the true-up period. (Trial Tr. 215:13-216:21, 992:8-11, 1374:10-20, 1395:23-1397:9.) Indeed, the language of the Transaction Bonus Agreement itself makes clear that McKay's receipt of the payment at closing was conditioned on "the transactions contemplated by the [SPA being] consummated," and the "transactions" to be "consummated" included the true-up process.

Second, as to Mona's unjust enrichment claim, McKay ignores that this claim is an alternative to Mona's breach of contract claim. If the jury determines that there was no agreement between Mona and McKay governing McKay's obligations, then the doctrine of unjust enrichment should fill that gap. Indeed, McKay's misconduct prevented Mona from receiving the benefits of the bargain, including the proceeds that he should have received in the transaction (including in connection with the true-up) and the realization of his sale objectives, including preservation of MEG's culture. Accordingly, McKay should not be permitted to keep the payments he received at closing under the doctrine of unjust enrichment.

Third, as to Mona's misrepresentation claim, McKay ignores the evidence adduced at trial proving that McKay was fully aware pre-closing of Oaktree's and ArchKey's plans to implement sweeping organizational and cultural changes at MEG post-closing to increase EBITDA margins

2

and then to resell MEG at a steep profit to Wall Street as part of a private equity buy-and-flip strategy.  Indeed, Clay Scharff, ArchKey's CEO, testified that he had multiple conversations with McKay pre-closing about Oaktree's strategies and, specifically, that "one of our first meetings described Oaktree's both ownership position as well as what their strategy and investment strategy was."  (Clay Scharff De Bene Esse Transcript 81:20-82:3.)  Mona testified that McKay never told him about Oaktree's and ArchKey's true plans and that, had he known about those plans, he never would have agreed to sell MEG to ArchKey.  (Trial Tr. 285:18-287:21, 288:24-292:10, 295:13-296:15.)  In fact, the evidence adduced at trial showed that McKay concealed the truth from Mona and told Mona the opposite from the truth—that Cap was selling to his long-time friends at Sachs and that Sachs would preserve MEG's culture.  (Plaintiff's Ex. 290.)

Fourth, as to Mona's breach of fiduciary duty claim, the same facts highlighted for Mona's misrepresentation claim apply with equal force to the breach of fiduciary duty claim.  Moreover, the evidence adduced at trial showed that McKay prioritized his own interests (including his desire to retire) over Mona's interests, including his well-known sale objectives.  This is a classic, textbook example of a breach of the fiduciary duty of loyalty.

These limited examples of the evidence adduced at trial show that the Rule 50(a) Motion must be denied, pursuant to the applicable plaintiff-friendly standard.  To the extent any further response is necessary, Mona will respond to McKay's Rule 50(a) Motion in greater detail through oral argument to be presented to the Court on January 2, 2024.

Mona is available to answer any questions this Court may have.

Sincerely,

*/s/ Aaron R. Sims*

Aaron R. Sims

cc:   All Counsel of Record (via CM/ECF)

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on January 1, 2024, a copy of the foregoing was served on all Counsel of Record via this Court's CM/ECF electronic filing system.

*/s/ Michael B. Brown*
Michael B. Brown

3