# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| VINCENT P. MONA | * |
| Plaintiff, | * |
| | * Civil No. **PJM 21-cv-1017** |
| v. | * |
| DAVID F. MCKAY, | * |
| Defendant. | * |

## MEMORANDUM OPINION

This case tried to a jury which, on January 5, 2024, after four weeks of trial, returned a verdict in favor of Plaintiff Vincent P. Mona ("Mona") against Defendant David F. McKay ("McKay") in the amount of Two Million Dollars ($2,000,000.00). The Court has reviewed Defendant's Motion for Judgment as a Matter of Law, ECF No. 180, his Renewed Motion for Judgment as a Matter of Law, Remittitur, and/or for a New Trial, ECF No. 198-1; Plaintiff's Responses in Opposition, ECF Nos. 181, 199; and Defendant's Reply, ECF No. 202.

Having considered the Parties' submissions, the Court is one hundred percent in accord with Plaintiff's Opposition to Defendant's Renewed Motion for Judgment as a Matter of Law, ECF No. 199, which the Court adopts in full by reference. That said, however, the Court highlights the following conclusions.

**I. Defendant's Renewed Motion for Judgment as a Matter of Law**

   **A.   Standard of Review**

Judgment as a matter of law pursuant to Rule 50(a) is proper if the district court determines "that a reasonable jury would not have a legally sufficient evidentiary basis to find for the" non-

1

moving party. Fed. R. Civ. P. 50(a)(1). The same standard governs a renewed motion for judgment under Rule 50(b). *See United States ex rel. Cody v. ManTech Int'l Corp.*, 746 F. App'x 166, 175 (4th Cir. 2018). In other words, "[w]hen a jury verdict has been returned, judgment as a matter of law may be granted only if, viewing the evidence in a light most favorable to the non-moving party (and in support of the jury's verdict) and drawing every legitimate inference in that party's favor, the only conclusion a reasonable jury could have reached is one in favor of the moving party." *Int'l Ground Transp. v. Mayor & City Council of Ocean City*, 475 F.3d 214, 218–19 (4th Cir. 2007).

Although the district court "should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000). "That is, the court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." *Id.* (internal quotations and citation omitted). Even if the court were to view the evidence differently from the jury, "[i]f reasonable minds could differ about the verdict," the court is obliged to affirm. *ABT Bldg. Prods. Corp. v. Nat'l Union Fire Ins. Co.*, 472 F.3d 99, 113 (4th Cir. 2006).

**B.   Discussion**

### 1.   McKay's "Renewed" Motion Goes Beyond the Grounds Advanced in His Rule 50(a) Motion.

Because a Rule 50(b) motion "is only a renewal of the preverdict motion, it can be granted only on grounds advanced in the preverdict motion." *Janson v. Reithoffer Shows, Inc.*, No. DLB-19-79, 2021 WL 5280894, at *5 (D. Md. Nov. 12, 2021), *aff'd*, 2023 WL 3750595 (4th Cir. June 1, 2023). Yet, McKay now moves for renewed judgment as a matter of law — the Court notes on

2

no less than fourteen grounds — based on several arguments not raised in his Rule 50(a) Motion. This pertains to the arguments in Section I, Parts (a), (c), (e), and (f)ii of the Renewed Motion, ECF No. 198-1, and, as such, they are not, technically speaking, properly before the Court.[1] Even so, the Court will have a few remarks to address some of these arguments.

### 2. Release Language in the Stock Purchase Agreement ("SPA")

The instant Motion is at least the third time McKay has asserted that release language in the SPA absolves him from liability for any breach of fiduciary duty owed to Mona. *See* ECF No. 102-1 (McKay's Motion for Summary Judgment) at 19–21; ECF No. 145-1 at 39 (Proposed Jury Instructions). Once again, in the Court's view, McKay misconstrues the SPA.

McKay's argument fails because § 6.5(a) of the SPA expressly excludes from the scope of the release "any claims <u>relating to or arising out of [the SPA]</u>, [or] any other Transaction Document . . . ." SPA § 6.5(a) (emphasis added), ECF No. 102-7 at 45–46.

The Court finds that all of Mona's claims — most certainly his breach of fiduciary duty claim — relate to the SPA. Among other things, the evidence showed that, during the process of selling Mona Electric Group ("MEG"), which culminated in the execution of the SPA with ArchKey, McKay disclosed confidential and unfavorable insider information about MEG to ArchKey. *See* Pl.'s Exs. 41, 159; Trial Tr., Vol. 12, 2207:24-2209:16.

Moreover, even if the release provision in the SPA did apply to Mona's breach of fiduciary duty claim, Mona presented a colorable argument to the Jury that the release was procured in bad faith or by fraud. While the Jury did not find McKay liable for a separate cause of action for civil fraud in the overall transaction, which is subject to a heightened burden of proof, the Jury was not

---

[1] Part (a) deals with the law governing fiduciary duties of corporate directors in Maryland, *id.* at 6, Part (c) deals with Maryland's "signature doctrine," *id.* at 11, Part (e) deals with Maryland's Business Judgment Rule generally, *id.* at 13, and Part (f)ii deals with Maryland's Business Judgment Rule in the context of McKay's Settlement of the Prince George's County Hospital Project, *id.* at 18.

asked and did not decide whether McKay had procured the release in § 6.5(a) based on false or fraudulent pretenses; the Jury's ruling on Mona's fraud claim therefore is in no way dispositive of that issue. Again, there is the evidence of McKay's disclosure of unfavorable and confidential information about Mona essentially contemporaneously with the execution of the SPA.

### 3. The "Signature Doctrine"

McKay further argues that Mona's breach of fiduciary duty claim is barred by Maryland's "signature doctrine," under which, if there is no dispute that a document was signed, the signer is "presumed to have read and understood [the signed document] as a matter of law." *Zos v. Wells Fargo Bank, N.A.*, 2017 WL 221787, at *3 (D. Md. Jan. 18, 2017). McKay's argument on this point, *i.e.*, that Mona's signature on the SPA is somehow dispositive of any claims against him, yet again does not preclude claims arising out of the SPA itself, *see* § 6.5(a), based on breach of fiduciary obligations unknown to Mona at the time the SPA was signed.

In addition to McKay's disclosure of unfavorable and confidential information about him to ArchKey, Mona continues to take issue with, among other things, the way in which McKay presented various buyer scenarios to him that, in his view, and quite likely in the Jury's view as well, obfuscated the potential downside of the SPA Mona eventually signed.

### 4. McKay's Fiduciary Duties after February 2, 2020

Another of McKay's arguments is that he no longer owed fiduciary duties to Mona as of February 1, 2020, the date the SPA was signed and McKay resigned as a director and officer of MEG. Both legally and factually, it is far from clear that McKay's fiduciary duties ceased when he resigned, but even if they did, ample evidence of McKay's conduct prior to that date, already cited, fairly supports the Jury's verdict.

In addition, the evidence presented at trial, including McKay's own testimony, showed that McKay made promises to Mona prior to February 1, 2020, regarding commitments that McKay said he would carry through after the ArchKey deal was signed. He promised, among other things, that the culture of MEG would remain intact and there would be no mass-layoff of MEG employees post-sale. That did not happen, nor was there any indication that McKay even attempted to prevent the lay-offs that did follow.

In the Court's view, McKay's post-February 2, 2020, promises are also actionable — as such obligations of an employee frequently are. Otherwise, an employee could always betray a former employer's confidences and avoid liability by the mere fact of his resignation. There was considerable evidence to support the Jury's finding that McKay breached the fiduciary duty he owed to Mona, even after he formally resigned as a MEG officer and director.

### 5.     Maryland's Business Judgment Rule

As to McKay's arguments with respect to Maryland's Business Judgment Rule, in the Court's view he misstates both the import of the rules Corporations and Associations Article ("CA") § 2-405.1(g) of the Maryland Code and the import of the Jury's verdict as to Mona's fraud claim.

CA § 2-405.1(g), Maryland's "business judgment rule," provides no shelter to McKay. It is merely a statutory presumption that an act of a director of a corporation, taken in accordance with subsection (c) of CA § 2-405.1, will not give rise to liability. But Subsection (c) of the statute provides that "[a] director of a corporation shall act: (1) In good faith; (2) In a manner the director reasonably believes to be in the best interests of the corporation; and (3) With the care that an ordinarily prudent person in a like position would use under similar circumstances." CA § 2-405.1(c).

From a factual standpoint, Mona produced considerable evidence, already cited, of McKay's bad faith, disloyalty, and self-dealing. So, insofar as the statute had or has any relevance to the case, the Jury certainly was able to negate any presumption in favor of McKay.

And while McKay argues that the statutory presumption may only be overcome "by proving gross negligence by clear and convincing evidence," ECF No. 198-1 at 13, nothing in the statute suggests that such a standard of proof is required. *See* CA § 2-405.1(a)–(i).

Finally, the Jury found that McKay breached a fiduciary duty in his capacity as both a director and as an officer of MEG. ECF No. 192 at 3. CA § 2-405.1 sets forth the standard of conduct governing directors of Maryland corporations; The conduct of a corporate officer, a different breed of cat, remains subject to common law fiduciary duties. McKay offers no argument as to why the Jury's decision to hold him liable as an officer of MEG should be disregarded.

### 6. McKay's Conduct Relating to the Prince George's County Hospital Settlement

McKay speculates that the Jury's verdict was based on McKay's actions with respect to the Prince George's County Hospital Project (the "Hospital Project"). The verdict, however, remains sound wholly apart from any evidence of McKay's conduct relating to the settlement of that Project.

Among other things, the Jury could have awarded Mona two million dollars (or some portion thereof) just for McKay's unfavorable and confidential descriptions of MEG during his early communications with ArchKey about a potential sale while McKay was still an officer and director of MEG. *See, e.g.*, Pl.'s Ex. 159. During that period, McKay told ArchKey of specific aspects of the proposed sale of MEG that in his opinion needed "fixing," described Mona as desperate to sell, and divulged to ArchKey what he felt was the true "book value" of MEG. *See id.*; *see also* Trial Tr., Vol. 2, 296:16–306:24. The Jury could have reasonably concluded that

6

McKay breached his fiduciary duties in regard to these actions, and may have, in fact, depressed the price ArchKey was willing to pay for MEG. Not inconceivably, had McKay not taken those actions, Mona might have been able to secure a ten percent higher purchase price at closing. Such a conclusion would more than account for the Jury's substantial award against McKay, without regard to McKay's role in the Prince George's Hospital Settlement.

## II.  Defendant's Motion for Remittitur

### A.  Standard of Review

"[T]he trial court has broad discretion" to determine whether or not to set aside a verdict. *Hebron Volunteer Fire Dept., Inc. v. Whitelock*, 890 A.2d 899, 904 (Md. 2006). "[W]here a verdict is so excessive that it cannot be justified by anything in the record . . . it is the duty of the judge to set it aside." *Holman v. Mark Indus., Inc.*, 610 F. Supp. 1195, 1204 (D. Md. 1985) (quoting *Virginian Railway Co. v. Armentrout*, 166 F.2d 400, 407 (4th Cir. 1948)). The standard for whether a motion for remittitur should be granted has been variously stated as "whether the verdict is grossly excessive, or shocks the conscience of the court, or is inordinate, or outrageously excessive, or even simply excessive." *Exxon Mobil Corp. v. Ford*, 71 A.3d 105, 135 (Md. 2013) (internal quotations and citation omitted).

### B.  Discussion

McKay does not argue that the verdict is grossly excessive, shocks the conscience of the court, or is otherwise inordinate. *See id.* He argues instead that some of the two million dollars awarded might have been for noneconomic damages, subject to Maryland's statutory cap of $860,000 to $890,000. *See* ECF No. 198-1 at 23–25. That McKay's counsel did not request a break-out for non-economic damages on the Jury Verdict Sheet demonstrates just how hollow this argument is. In any case, all the evidence of economic damages, recited above, easily justifies the

7

Jury's award here. *See supra* Part I.B.6. The Court, by the way, agrees with Mona that McKay has misstated the applicability of the "noneconomic damages cap" to this case. *See* ECF No. 199 at 20. MD. CODE § 11-108(b) applies to "any action for damages for personal injury." It does not apply to Mona's breach of fiduciary duty claim.

### III. Defendant's Motion for a New Trial

McKay also asks the Court to grant him a new trial pursuant to Fed. R. Civ. P. 59.

#### A.   Standard of Review

A Rule 59 motion for a new trial may be and frequently is joined with a Rule 50 motion for judgment as a matter of law. Fed. R. Civ. P. 50(b). In considering a Rule 59 motion, the court must set aside the verdict and grant a new trial if the verdict is (1) against the clear weight of the evidence; (2) based upon evidence that is false; or (3) will result in a miscarriage of justice, even though there may be substantial evidence that would prevent the direction of a verdict. *Pathways Psychosocial v. Town of Leonardtown, MD*, 223 F. Supp. 2d 699, 706 (D. Md. 2002) (quoting *Knussman v. Maryland*, 272 F.3d 625, 639 (4th Cir. 2001)).

"Unlike the procedure under Rule 50(b), on a motion for new trial under Rule 59(e) a district court is permitted to weigh the evidence." *Id.* (internal quotation and citation omitted). Additionally, reconsideration of a judgment under Rule 59 is an "extraordinary remedy" that should be used "sparingly." *Pac. Ins. Co. v. Am. Nat. Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998).

#### B.   Discussion

There is no need to repeat here why the Jury Verdict is <u>NOT</u> against the clear weight of the evidence, why it is not false, and why it will not result in a miscarriage of justice. Regardless of how McKay may feel about his comportment in this drama, a number of the actions he took while

an officer, director, and fiduciary of MEG worked to Mona's severe disadvantage in the sale of MEG to ArchKey. Just telling a prospective buyer, as seller's agent, that the seller is "desperate to sell," in a sense tells all.

Nor was there any false evidence that characterized Mona's case, much less evidence that misled the Jury. McKay does take issue with evidence he feels was "unfair," but not only was the evidence not unfair, it simply was not false. For example, the Court allowed into evidence a report commissioned by Mona's son Mark, which collected various opinions of experts expressing ways in which Mona felt he had been harmed in the sale of ArchKey. The Court let the report in, subject to a careful contemporaneous instruction to the Jury that it was not to be received for the truth of any opinion contained-therein, but only to show what Mona believed the impact of the sale transaction to ArchKey would be. Trial Tr. Vol. 9, 1370:7–1371:2.

Even so, before admitting the Report, the Court gave defense counsel ample opportunity mid-trial to argue for redactions from the Report. *Id.* at 1366–69. Mona's counsel proposed redactions, but defense counsel delayed responding, then proposed additional redactions that had not previously been raised, and the parties ended up stalemated. *See id.* at 1382; *see also* Vol. 14, 2503–05. Under the circumstances, the Court admitted the Report unredacted, subject to the aforementioned clear limiting instruction. But in an effort to be even-handed, the Court allowed defense counsel to put in the Handscom Report, Def.'s Ex. 442, which also contained hearsay conclusions and opinions rather like Plaintiff's Impact Report in that regard, but also subject to the same limiting instruction as Plaintiff's Impact Report, *i.e.*, that it was not to be taken as proof of any matter contained therein, that it only stated Defendant's opinion of the impact of the transaction. *See* Trial Tr., Vol. 10, 1624–25. There is no reason to suppose that the Jury was unable to abide by the Court's limiting instructions.

## IV. Conclusion

In all, there has been and will be no miscarriage of justice by affirming the Jury's verdict. Again, the foregoing only highlight the infirmities of McKay's arguments for a new trial. The Court finds merit in no other arguments in McKay's papers that would justify judgment in his favor, remittitur, or a new trial.

For the foregoing reasons, the Court **DENIES** all three of Defendant's post-verdict Motions, ECF No. 198, as well as Defendant's Rule 50(a) Motion, ECF No. 180, and will **ENTER** Final Judgment in favor of Plaintiff and against Defendant in the sum of two million dollars ($2,000,000.00) effective January 5, 2024 (the date of the Jury Verdict), plus Court costs.

A separate Order will **ISSUE**.

May 9, 2024

PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE